In re Petition of Clarion Borough to contest election of Jacob Black to office of Council of said Borough. Appeal of Jacob Black.

*Boroughs—Election of councilmen—Statutes—Repeal—Acts of April 6, 1841, April 3, 1851, June 1, 1883, and May 22, 1895.*

The Act of May 22, 1895, P. L. 109, relating to the election of councilmen in boroughs not divided into wards, does not repeal the local Act of April 6, 1841, P. L. 155, incorporating the borough of Clarion, in so far as the latter act relates to the election of councilmen and the filling of a vacancy in the office of councilman where there is a tie vote.

The borough of Clarion was incorporated by the special Act of April 6, 1841, P. L. 155, section 2 of which provided that at elections for borough officers " in case any two or more candidates should have an equal number of votes, the preference shall be determined by lot." In 1873, the borough of Clarion, by appropriate proceedings brought itself under the general borough Act of April 3, 1851, P. L. 320. *Held*, (1) that the method of deciding title to office on a tie vote was not affected by the coming of the borough under the Act of April 3, 1851, P. L. 320; (2) that neither the Acts of June 1, 1883, P. L. 54, nor May 22, 1895, P. L. 109, repealed the provisions of the Act of April 6, 1841, P. L. 155, relating to the filling of the office of councilman by lot when there was a tie vote.

Argued Oct. 24, 1898.  Appeal, No. 109, Oct. T., 1898, by Jacob Black, from order of Q. S. Clarion Co., Feb. T., 1898, No. 54, declaring office of councilman vacant.  Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

Petition to declare vacant the office of town councilman held and exercised by Jacob Black.

The following agreement of counsel was filed of record:

" It is hereby agreed by the counsel for the respective parties to this issue: that at the borough election held for the borough of Clarion on February 15, 1898, Jacob Black received 151 votes for member of town council and Porter Haskell received 151 votes for member of town council; a tie vote being announced the two inspectors in the presence of the judge of the election drew lots which resulted in Jacob Black being chosen.  The said board thereupon declared Jacob Black duly elected, and duly certified the same.

" That the said Jacob Black afterward took the oath of office

before a notary public and by reason of his certificate of election was received as a member of the town council, and is filling said position without being elected or voted for by said council."

The court in an opinion by CLARK, P. J., entered judgment of ouster against the respondent.

*Error assigned* was the order of the court.

*B. J. Reid*, with him *G. G. Sloan* and *F. J. Maffett*, for appellant, cited Malloy v. Reinhard, 115 Pa. 25; Bell v. Allegheny County, 149 Pa. 381; Com. v. DeCamp, 177 Pa. 112; State v. Grady, 34 Conn. 118; Wood v. U. S., 16 Pet. 342.

*Don C. Corbett*, with him *J. T. Maffett*, for appellees, cited Com. v. Macferron, 152 Pa. 244; Quinn v. Cumberland County, 162 Pa. 55; Fraim v. Lancaster County, 171 Pa. 436.

OPINION BY MR. JUSTICE MITCHELL, January 2, 1899:

The borough of Clarion was incorporated by special act of April 6, 1841, P. L. 155, sec. 2 of which provided that at elections for borough officers " in case any two or more candidates should have an equal number of votes, the preference shall be determined by lot," etc. This was in accord with the general Act of April 1, 1834, P. L. 164, sec. 5, regulating borough elections. It appears to have been the legislative policy that in the election of subordinate officers, such as those of boroughs, where the choice of the electors was so evenly balanced, the decision should be made by lot rather than put the borough to the delay and expense of another election. This provision of the act of 1834 has not been expressly repealed, so far as we are informed, nor does it appear that it has been repealed by implication. That, however, is not now before us, as even an express repeal would not carry with it a repeal of the similar provision in the special charter of Clarion of 1841.

In 1873 the borough of Clarion by appropriate proceedings brought itself under what is commonly known as the general borough Act of April 3, 1851, P. L. 320, thereby, in the language of the act, becoming " subject to the restrictions and possessing the powers and privileges conferred by this act." And thereupon the provisions of the former charter were " an-

nulled . . . . so far as they are in conflict with the provisions of this act." We must therefore look at the act with reference to elections. The only sections having any bearing in this regard are fourteen and fifteen, which direct that borough elections shall be held in accordance with the laws regulating township elections, and that elections for borough officers shall be held at the time and place for the choice of inspectors of the general election. But in both sections there is the significant saving clause, "unless otherwise provided for in the charter." It is therefore clear that the original charter method of deciding the title to office on a tie vote was not affected by the coming of the borough under the act of 1851.

But it is further argued that the charter was repealed as to this subject by the Act of May 22, 1895, P. L. 109, and the learned judge below was of this opinion. This act is entitled "An act to designate the number of councilmen to be elected in the several boroughs of this commonwealth not divided into wards, to provide for their election, and for the filling of vacancies, and to fix the length of term for which they shall serve." The law as to the elections themselves, that is, the time, place, manner, etc., of holding them and declaring the result, is not in any way changed or referred to, the provisions of the act, following the indications of the title, being directed to the number, term, etc., of councilmen. Section four, the only one that can in any way bear upon the present inquiry, provides that "the members of town councils shall have power to fill any vacancy which may occur therein by death, resignation, removal from the borough, or otherwise, until the next annual election," etc. The question therefore, in this aspect comes down to whether an election which results in a tie vote produces a "vacancy." As a general question this manifestly must depend on whether or not the existing election laws provide for such a case. If they do not, then clearly there is a failure to elect, and a resulting vacancy. But if they do, and the office can be filled by carrying out their provisions, it is equally clear that there has been a valid election and there is no vacancy.

As we have already seen, under the act of 1841, a tie vote would not have made a vacancy, because such contingency was expressly provided for. And this was the state of the law

down to the passage of the act of 1895, unless altered by the intermediate Act of June 1, 1883, P. L. 54. This act, of much more limited application, contained the same provision as to vacancies as that already quoted from the act of 1895, but, as it had no repealing clause, the learned judge below preferred to rest his view on the later and more general act. It will therefore be convenient for us to follow the same course with the single remark that if the act of 1841 is not repealed by the act of 1895, a fortiori, it cannot be by the act of 1883.

The act of 1895 does not make any change in express terms, nor does it seem to do so by plain intent. No change in the law of elections appears to have been in the legislative mind, which was concerned with the number and terms of the elective officers, rather than with the method of their election. The mention of vacancies was in that connection only. It was to provide for filling out unexpired terms, not for full terms which lacked incumbents. And this appears quite plainly from the prior legislation on the subject, wherein the distinction is expressly made. The same section of the act of 1834 which provided for the case of a tie vote, as already quoted, also provided that "in case of the death, resignation, removal or refusal of any person so elected, or if it should so happen that no election should be holden on the day and in the manner aforesaid," the burgess should issue his precept for a new election. This same provision, totidem verbis, was written into the charter of 1841, section 2. Under these acts there were two distinct classes of cases in which the office might be temporarily without an incumbent, and in which in a certain general sense there might be said to be a vacancy. And each had its specific remedy expressly enacted, in the case of a tie vote by a choice by lot between the equal candidates, in the case of death, resignation, etc., by a new election. Both classes might exist as to any of the borough officers, burgess, councilman, town constable, overseer of the poor, etc. When the act of 1895 was passed it altered the remedy in the case of death, resignation, etc., so far, as relates to town councilmen, but left it untouched as to the other officers, and left the other remedy for the case of a tie vote untouched as to all.

By the agreed statement of facts it appears that the appellant and another candidate having an equal number of votes,

a lot was drawn in accordance with the directions of the charter of 1841, and resulted in appellant's favor.  He was therefore legally elected.

Judgment reversed and record remitted with instructions to dismiss the petition with costs to be paid by the borough or by the petitioners, or divided between them as the court below may deem just and proper.